OSCAR F. BRAVO ET AL., Plaintiffs and Appellants, $v.$ ROBERT HEINRICH HAU SCHNABEL ET AL., Defendants and Appellees.

Nos. 8315 and 8380.   Argued December 5, 1941.   Decided January 15, 1942.

*Gélpi & Gelpí* for appellants. *Miguel A. García Méndez* and *José Sabater* for appellees.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

On April 20, 1916, Arturo Hau Salguero, owner of the Sábalos Estate, situated in Mayagüez, leased that property to Oscar F. Bravo for a term to end on May 31, 1929. The *sixth* clause of the contract of lease reads thus:

"At the termination of this contract, the lessee may remove and dispose of any building erected by him or any fence placed by him in the porperty or any improvement made by him thereon for his comfort or convenience during the time of this lease; but it is well understood that should he fail to do so everything remaining in the properties on the day of the termination of this contract, as well as any planting or ratoon existing therein, shall be for the benefit of Mr. Hau, without any right on the part of the lessee to idemand from the latter any indemnity or compensation therefor."

On February 18, 1926, Hau and Bravo entered into a new contract of lease, to end on May 31, 1939. The *seventh* clause of the new contract is identical with the one which we have just transcribed.

In the complaint filed by Oscar F. Bravo and his assignee, The Mayagüez Sugar Company, Inc., against the heirs of Arturo Hau Salguero and the new lessees of the latter, it was alleged in substance as follows:

That for over twenty years and until May 31, 1939, the Sábalos Estate had been devoted to the cultivation of sugarcane; that in 1937 the Congress of the United States passed the act known as the Sugar Act of 1937 (50 Stat. 903), whereby the production of sugar in Puerto Rico was limited, an individual allotment for each property under cultivation was fixed, and the manufacturers were prohibited from grinding cane in excess of the allotments assigned to each grower; that during the 1938–39 crop the Sábalos Estate was planted in cane and due to the legal prohibition "there were left unharvested because they were not allowed to be cut nor ground, before the termination of the contract of lease above mentioned, twenty-five (25) cane-planted acres (*cuerdas*) with an average yield of 30 tons per acre and with a total value of three thousand two hundred dollars"; that before the expiration of the lease, the plaintiffs, thinking that the unharvested canes "did not constitute plantings (*plantaciones*) in accordance with the language used in the contract of lease," notified the defendants that said canes belonged to the lessee company as they had been planted in good faith and it had not been possible to cut and grind them as they exceeded the allotment assigned to the Sábalos Estate; that the defendants had insisted and still insist that said canes belong to them free from any obligation to pay therefor, in accordance with the terms of the above-quoted clause of the contract.

The plaintiffs prayed that a judgment or decree be rendered declaring: (*a*) that the unharvested canes which ex-

isted at the time of the expiration of the lease contract and which could not be ground by reason of the legal prohibition, are not included within the terms of the *seventh* clause, *supra*, and they are the exclusive property of the plaintiff company; and (b) that in case the defendants desire to acquire said canes they must pay to the plaintiffs the sum of $3,200.

The defendants in their answer opposing the allegations of the complaint alleged, in substance, as follows: That the plaintiffs could have ground the canes in question and that if they failed to do so it was due solely to their fault and negligence; that ever since the restrictive quota system was established in 1934, the plaintiffs new what was the allotment for the Sábalos Estate, and that if during the 1939 crop there were unharvested canes, said allotment having been exceeded, it was due to the fault and negligence of the plaintiffs; that the *seventh* clause of the contract of lease admits of no other interpretation than that resulting from the rightful meaning of the words therein, as there is no ambiguity or doubt regarding them; that the term ''plantings'' together with the term ''ratoons,'' used in said clause, clearly indicate that said *plantings* or *ratoons* are of sugarcane and do not refer to any other kind of plantings; and that that interpretation is strengthened by the fact that the property had been leased for the planting and cultivation of sugarcane which is the business to which it has devoted for over 20 consecutive years.

On May 4, 1940, the District Court of Mayagüez rendered judgment dismissing the complaint and adjudging the plaintiffs to pay costs, plus $500 as counsel fees of the defendants. Thereupon the plaintiffs took an appeal, and in support thereof they urge that the lower court erred: (a) in construing the seventh clause of the contract without taking into consideration the variations and restrictions of the Sugar Act of 1937; (b) in failing to take into account that

said clause had been affected and modified as a result of such legislation; (c) in not considering as having been planted in good faith the unharvested canes which existed at the termination of the contract, and in not preventing the present lessees from enriching themselves at the expense of the plaintiffs; (d) in finding that the testimony of Guillermo Pérez was conclusive and had not been contradicted; and (f) in adjudging the plaintiffs to pay $500 as attorney's fees, without first finding them guilty of obstinacy (temeridad). We will consider the six assignments of error together, as all of them involve a single fundamental question which we state thus: Assuming that the restriction imposed by the Sugar Act of 1937 was the only reason which the lessee had for not cutting the 25 acres of sugarcane, does that restriction constitute a lawful ground sufficient to exempt the lessee from the fulfillment of the obligations contracted by such lessee under the seventh clause of the lease?

The terms of said clause are so clear and definite that they leave no room for doubt as to the intention of the contracting parties. It is evident that the intention of the parties was that upon the termination of the contract of lease on May 31, 1939, or before that time, the lessee would have the right to remove the buildings, fences, and improvements which he might have erected or made for his own convenience during the term of the lease. What was to happen if by May 31, 1939, the lessee had not made use of that right? The contracting parties dispensing with the special provisions of the Civil Code applicable to leases of rural estates (secs. 1478 to 1482), in clear and concise terms specified the law regulating the respective rights of the parties in the event that upon the expiration of the term, the lessee had not exercised his right to remove the buildings, fences, improvements, plantings, and ratoons. And accordingly they stipulated as follows:

"but it is well understood that should he fail to do so everything remaining in the properties on the day of the termination of this contract, *as well as all plantings and ratoons existing therein,* shall be for the benefit of Mr. Hau, without any right on the part of the lessee to demand from the latter any indemnity or compensation therefor." (Italics ours.)

If the above-transcribed stipulation had not been made, the incoming lessees, defendants herein, would have been bound to permit the outgoing lessee to enter upon the property and do whatever was necessary for the harvesting and utilization of the standing canes which existed at the time of the expiration of the lease. It was undoubtedly in order to release the property entirely upon the termination of the lease, so as to avoid the necessity of imposing on the new lessee the obligation to permit the outgoing lessee to enter the premises, that the contracting parties fixed May 31, 1939, as the end of the peremptory term during which the lessee must remove from the property the buildings, fences, improvements, and plantings.

The reasons advanced by the lessee in order to explain its failure to cut and remove the canes before May 31, 1939, can not be considered as a fortuitous and extraordinary case, or a case of *vis major* which the contracting parties could not have reasonably foreseen.

The obligation contracted is clear and unconditional. All the unharvested plantings and ratoons found in the premises at the termination of the lease became the property of the lessor, without any obligation on the part of the latter to pay the value thereof.

We fail to find that the lower court committed any error in weighing the testimony of the defendants' witness Guillermo Pérez Ortiz, assistant to the Manager of the Agricultural Adjustment Administration. Said witness testified, in substance, that in accordance with the original Act of 1934, the practice was followed of permitting only the grinding of the canes specifically covered by each contract; that in

accordance with the subsequent statute, the Sugar Act of 1937, the proportionate allotments were assigned under the name of the person who had the dominion or control of the various parcels; that that was the procedure applied in the year 1939; that the plaintiff company could have cut and ground the 25 acres which remained unharvested on the Sábalos Estate and left standing an equal amount of canes on any other farm under its control and thus would not have suffered any loss; that it would not have committed any public offense by grinding those canes and charging them to any other parcel; that a farmer who has several parcels of land planted in cane may fill his allotment from any land under his control.

In order to overcome the testimony of Mr. Pérez, the plaintiffs introduced the testimony of Mr. Waldemar Bravo, who stated: that the plaintiffs could not cut all the standing canes which existed in the Sábalos Estate because the notice of the proportionate allotment to the lands controlled by them was received only four weeks before the end of the grinding season; that the cutting of the canes was started on the month of January and when the notice arrived the canes from the other parcels had already been ground; that 27,000 tons out of 900 acres of cane belonging to the plaintiff corporation remained unharvested; that during the last four weeks the grinding was done at full capacity; that the canes from the Sábalos Estate were not sufficiently ripe when the grinding season started nor when the notice of the allotment arrived; that everything within his reach was done in order to grind all of the canes. Answering questions asked by the judge, the witness stated that they could not cut the whole of the canes from the Sábalos Estate due to the fact that not all of the canes were ripe. On cross-examination by the defense, he testified: that when the canes were ready for cutting, the cutting at the Sábalos Estate was begun; that when the contract expired there was no new cane; and that in May there is no green cane.

The testimony of Mr. Bravo does not overcome or contradict in any way that of Mr. Pérez. Bravo admits that it would have been legally possible for the plaintiff to cut and grind all of the canes from the Sábalos Estate, charging other parcels therefor, but he claims a new reason to justify the fact of their not being ground before the termination of the lease, and it is, that the canes were not yet ripe when the notice of the allotment was received.

The lower court did not err in holding that the basic allegation of the complaint, that is, that the 25 acres of cane "were left unharvested because the canes were not allowed to be cut nor ground before the termination of the contract of lease," is not supported by the evidence.

■ We are of opinion that the sum of $500, adjudged to be paid by the plaintiffs as attorney's fees to the defendants, is excessive, regard being had for the fact that the amount involved in the suit is only $3,200, and that the defendants are the ones who will receive the whole benefit from that sum.

■ The plaintiffs have also appealed from the order rendered by the lower court on March 18, 1941, approving the memorandum of costs submitted by the defendants and which amounted to $48. The lower court reduced that amount to $43.

Such appeal is without merit. The sum of $20 awarded to cover the traveling expenses of counsel for the defendants in going from San Germán to San Juan in order to attend a motion for transferring the case to Mayagüez is, in our judgment, a reasonable amount. Similarly as to the item of $8 paid to the Assistant to the Manager of the A. A. A. for his traveling expenses from San Juan to Mayagüez. The remaining items, which relate to the service of process and witnesses' fees, are in accord with the law. The appeal must be denied.

For the reason stated the judgment appealed from is modified by reducing to $300 the amount awarded as attor-

700

ney's fees, and as so modified, the judgment is affirmed. The order approving the memorandum of costs is likewise affirmed.

Mr. Justice Todd, Jr., took no part in the decision of this case.